UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LITMAN; and PAIGE LOPYNSKI, collectively p/k/a "BONNIE X CLYDE", <br><br> Plaintiffs, <br><br> v. <br><br> LOWLY PALACE, LLC, a Delaware limited liability company; CREATE MUSIC GROUP, INC., a Delaware corporation; CBMG, LLC, a Delaware limited liability company; and DOES 1-18, inclusive, <br><br> Defendants. | Case No. 2:26-cv-03404-SPG-RAO <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO REMAND; DENYING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM; AND GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II AND IV OF PLAINTIFFS' FOURTH AMENDED COMPLAINT [ECF NOS. 10, 26, 27]** |

Before the Court are three Motions: (1) Plaintiffs Daniel Litman ("Litman") and Paige Lopynski's ("Lopynski" or, together with Litman, "Plaintiffs") Motion for an Order Remanding Case to the California Superior Court, County of Los Angeles, (ECF No. 26 ("Remand Motion")); (2) Defendants Lowly Palace, LLC ("Lowly Palace"), Create Music Group, Inc. ("Create Music Group"), and CBMG, LLC's ("CBMG" or, together with Lowly Palace and Create Music Group, "Defendants") Motion to Dismiss Counts II and

-1-

IV of Plaintiffs' Fourth Amended Complaint, (ECF No. 10-1 ("Defendants' MTD")); and (3) Plaintiffs' Motion to Dismiss Counterclaim, (ECF No. 27-1 ("Plaintiffs' MTD")).

The Court has read and considered the Motions and concluded that they are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Remand Motion, DENIES Plaintiffs' Motion to Dismiss, and GRANTS Defendants' Motion to Dismiss.

## I.     BACKGROUND

### A.     Plaintiffs' Allegations

The following factual allegations are taken from Plaintiffs' Fourth Amended Complaint ("FAC").  (ECF No. 1-2 ("FAC")).  Plaintiffs are musical artists, known collectively under the name Bonnie X Clyde.  Lowly Palace is a music label that entered into a contractual relationship with Plaintiffs.  *See* (*id.* at 83).  Create Music Group is the parent company of Lowly Palace, while CBMG is a joint venture of Create Music Group and Lowly Palace that serves as the enterprise's treasury.  (*Id.* ¶¶ 3, 6, 8).

On September 28, 2022, Plaintiffs entered into a contract with Lowly Palace (the "Recording Agreement"), under which Plaintiffs agreed to produce certain master recordings and grant Lowly Palace a 15-year exclusive license, in exchange for an advance payment, marketing funds, and shared royalties.  (*Id.* at 83-86).  Plaintiffs allege that they were fraudulently induced into signing the Recording Agreement by false claims that Defendants would provide financial and marketing support.  (*Id.* ¶ 32).  Plaintiffs also allege that Defendants misled Plaintiffs by stating only that "Distributor costs were deductible," while failing to disclose that a hidden 15% fee would be paid from gross receipts to a subsidiary of Create Music Group.  (*Id.* ¶¶ 33-34).  Plaintiffs further claim that they partnered with Defendants based on promises that studio costs would be waived when, in fact, Defendants later deducted over $29,000 in engineering and studio fees from Plaintiffs' fund without notice.  (*Id.* ¶¶ 40-41).

Following the execution of the initial Recording Agreement, Plaintiffs delivered a commercially successful album that generated significant revenue. (*Id.* ¶ 51). In June 2023, Defendants suggested an amendment to the Recording Agreement, under which Defendants would provide a far greater financial commitment for marketing (the "Amended Recording Agreement"). (*Id.* ¶ 52); *see* (*id.* at 90-91). Plaintiffs claim that the Amended Recording Agreement did not alter certain terms in the original Recording Agreement, which mandated spending of the marketing funds. (*Id.* ¶ 53). Plaintiffs timely performed all obligations under the initial and amended Agreements by providing 25 master recordings. (*Id.* ¶ 57).

Despite Plaintiffs' performance of their contractual duties, in January 2024, Defendants ceased performance on their end of the deal pursuant to a policy of internal restructuring. (*Id.* ¶ 58). Thereafter, citing a "mutual approval" clause in the Amended Recording Agreement, Defendants blocked all marketing plans submitted by Plaintiffs, ultimately communicating that "the money will not be spent period." (*Id.* ¶¶ 60, 64). Plaintiffs attempted to negotiate an addendum outlining steps for a formal accounting and distribution of funds, but Defendants refused. (*Id.* ¶¶ 68-69). After negotiations failed, Plaintiffs ultimately repudiated the Agreements on August 12, 2024. (*Id.* ¶ 77). In June 2025, Defendants sent Plaintiff a $334,000 payment, which Plaintiffs allege does not retroactively cure earlier breaches. (*Id.* ¶ 78). Defendants have also continued to withhold the 15% distribution fee from revenue sharing. (*Id.* ¶ 84).

Separately, on November 1, 2023, Lowly Palace executed a licensing agreement with Lopynski individually, performing under the artist name "jimmi paige." (*Id.* ¶ 96). Under this agreement, Plaintiff was to deliver seven master recordings in return for a $10,000 advance, $40,000 marketing funds, and revenue sharing. (*Id.* ¶ 97). These recordings faced the same January 2024 funding freeze, hidden distribution fee, and deceptive accounting practices applied to Plaintiffs collectively. (*Id.* ¶ 99).

Plaintiffs assert eight claims against Defendants: (1) fraud in the inducement; (2) breach of fiduciary duty; (3) breach of contract; (4) civil theft; (5) violation of the unfair

competition law; (6) accounting; (7) declaratory relief; and (8) negligent misrepresentation. (*Id.* at 28-75). As relief, Plaintiffs seek more than $4 million in compensatory damages, as well as punitive damages. (*Id.* at 25-28, 77-78). Alternatively, Plaintiffs seek equitable remedies in the form of equitable rescission, equitable damages, and a declaration that all rights, titles, and interests in the master recordings revert to Plaintiffs. (*Id.* at 78-79).

### B.    Defendants' Counterclaims

Defendants separately filed a Counterclaim on April 10, 2026. (ECF No. 14 ("Counterclaim")). In the Counterclaim, Defendants allege that, beginning in 2024, the relationship among the parties began to deteriorate due to Plaintiffs' demands for unreasonable marketing expenditures. (*Id.* ¶ 3). By August 2024, with the parties at an impasse over marketing plans, Plaintiffs purported to terminate the Recording Agreement. (*Id.* ¶ 6). Defendants assert that this termination was not effective because the Recording Agreement did not require Defendants to spend any marketing funds or require the parties to agree on any specific marketing expenditures. (*Id.* ¶ 7).

In June 2025, while this action was pending in state court, Defendants decided to advance Plaintiffs $334,000 in marketing funds that Plaintiffs alleged had been wrongfully denied. (*Id.* ¶ 11). In a letter sent to Plaintiffs on June 11, 2025, Lowly Palace communicated that these funds would be spent on marketing Plaintiffs' music under the terms of the Recording Agreement. (*Id.* ¶ 13). Defendants sent the funds on June 20, 2025. (*Id.* ¶ 15). Pursuant to the Recording Agreement, the funds were to be spent, if at all, by February 2, 2026. (*Id.* ¶ 19). After acknowledging receipt of the funds, Plaintiffs asserted that they were not required to spend the funds on marketing. (*Id.* ¶ 17). Plaintiffs have indicated that they have not spent the funds and are holding the funds as a set off against an eventual recovery on their claims. (*Id.* ¶ 20).

Defendants assert the following counterclaims against Plaintiffs related to the $334,000 payment: (1) conversion; (2) breach of contract; (3) breach of good faith and fair dealing; (4) restitution/breach of quasi-contract; (5) accounting; and (6) declaratory

-4-

judgment. (*Id.* at 8-14). In addition to other remedies, Defendants seek a declaration that they have not infringed on Plaintiffs' copyright; that they own the exclusive rights to administer the music; that the Recording Agreement remains in effect; and that, if the Recording Agreement is terminated, Defendants retain the copyright licenses. (*Id.* at 14-15).

### C. Procedural History

Plaintiffs initiated this action in Los Angeles County Superior Court on August 20, 2024. (ECF No. 1-3 at 10). This case remained at the pleadings stage in Superior Court for more than a year-and-a-half, culminating in the current Fourth Amended Complaint, filed on March 24, 2026. (FAC at 79). On March 30, 2026, Defendants removed the case to this Court, arguing that there is federal subject matter jurisdiction because Plaintiffs' claims for civil theft and declaratory relief both raise questions of federal copyright law. (ECF No. 1).

Defendants filed their Motion to Dismiss on April 10, 2026, seeking dismissal of Plaintiffs' claims two and four for breach of fiduciary duty and civil theft. (Defendants' MTD). On April 13, 2026, this action was transferred to this Court, and the Court continued the hearing on the Motion from May 8, 2026, to May 13, 2026, without changing the existing briefing schedule. (ECF Nos. 15, 16). On April 24, 2026, Defendants filed a notice of non-opposition, in which they noted that Plaintiffs had not opposed the Motion. (ECF No. 22). However, on April 30, 2026, Plaintiffs appeared and filed an opposition to Defendants' Motion. (ECF No. 24 ("Opp. to Defendants' MTD")). On May 5, 2026, the Court issued an order accepting Plaintiffs' untimely Opposition and continuing the hearing and briefing schedule to permit Defendants an opportunity to respond. (ECF No. 28). Defendants filed a reply in support of their Motion to Dismiss on May 13, 2026. (ECF No. 31 ("Reply ISO Defendants' MTD")).

Separately, Defendants filed their Counterclaim on April 10, 2026. (Counterclaim). On May 5, 2026, Plaintiffs filed their Motion to Dismiss the Counterclaim. (Plaintiffs' MTD). Defendants filed an opposition brief on May 13, 2026, (ECF No. 32 ("Opp. to

Plaintiffs' MTD")), and Plaintiffs replied in support of the Motion on May 20, 2026, (ECF No. 34 ("Reply ISO Plaintiffs' MTD")).

Finally, on May 5, 2026, Plaintiffs filed their Motion to Remand this action to Los Angeles County Superior Court. (Remand Mot.). Defendants filed an opposition to the Remand Motion on May 13, 2026, (ECF No. 33 ("Opp. to Remand Mot.")), and Plaintiffs replied in support of the Motion on May 20, 2026, (ECF No. 35 ("Reply ISO Remand Mot.")). The Court will examine each of these Motions, beginning with Plaintiffs' Remand Motion.

## II.     REMAND MOTION

### A.     Legal Standard

Federal courts are courts of limited jurisdiction, with subject-matter jurisdiction only over matters authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331 or there is diversity jurisdiction under 28 U.S.C. § 1332. For "any civil action arising under any Act of Congress relating to . . . copyrights," Congress has specified that district courts have original jurisdiction and that "[n]o State court shall have jurisdiction over any claim for relief." 28 U.S.C. § 1338(a).

The removal statute is strictly construed against removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (quoting *Gaus*, 980 F.2d at 566). Courts resolve any doubt about the right of removal in favor of remand. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018).

**B.      Discussion**

Plaintiffs assert that remand of this action is required for several independent reasons.  First, Plaintiffs argue that the Recording Agreement contains a mandatory forum-selection clause that requires disputes be brought in Los Angeles County Superior Court.  Second, Plaintiffs argue that Defendants' counterclaims cannot serve as the basis for federal question jurisdiction.  Third, Plaintiffs contend that the FAC contains no federal question on its face, and that Defendants' assertion of copyright preemption as a defense does not confer federal question jurisdiction.  Finally, Plaintiffs argue that Defendants' notice of removal was untimely because Defendants did not remove the case within thirty days of Plaintiffs' filing of the original complaint.[1]

As an initial matter, however, Plaintiffs filed the Remand Motion on May 5, 2026—more than thirty days after Defendants' March 30, 2026, removal of this action.  Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction *must* be made within 30 days after the filing of the notice of removal."  28 U.S.C. § 1447(c) (emphasis added).  Through its use of mandatory language, § 1447(c) "prohibits a defect in removal procedure from being raised later than 30 days after the filing of the notice of removal."  *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995).  A district court has "no authority to remand [a] case to [] state court on the basis of a defect in removal procedure raised for the first time more than 30 days after the filing of the notice of removal."  *Id.*; *see also Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1193 (9th Cir. 2003) (holding that district courts lack authority to

---

[1] In their Reply brief, Plaintiffs assert that Defendants are estopped from removing this action because they previously stipulated to dismissal of a separate federal action. (Reply ISO Remand Mot. at 9).  Plaintiffs assert that Defendants have conceded this point by failing to respond.  However, Plaintiffs' opening brief contains no reference to the November 2025 stipulation, and the only reference to estoppel is in relation to the forum selection clause, not any stipulated dismissal.  Because it appears that this argument is being raised for the first time in a reply brief, the Court need not consider it. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

-7-

"remand *sua sponte* for defects in removal procedure"). Because Plaintiffs failed to move for remand within 30 days of removal, they have waived any procedural objections to removal, including their argument that removal was untimely. However, Plaintiffs' challenges to subject matter jurisdiction may be raised "at any time before final judgment." 28 U.S.C. § 1446(c). The Court will thus examine Plaintiffs' remaining arguments in turn.

### 1. Forum Selection Clause

Plaintiffs first argue that this case should be remanded pursuant to a forum selection clause in the Recording Agreement, which states: "This Agreement is governed by California law (and all disputes will be brought in Los Angeles County), but if we are sued or joined (e.g. by joinder or impleader) in any other court or forum by a person, corporation or other entity other than you in respect of any matter that may give rise to a claim against you, you hereby consent to the jurisdiction of such court or forum over any such claim asserted against you." (FAC at 86). Plaintiff argues that the phrase "Los Angeles County" is a county-specific designation that incorporates only the state courts within that county, not the federal courts. (Remand Mot. at 13). In their Opposition, Defendants argue that this phrase means only that the court must be located in Los Angeles County, not that the court must be a state court in that county.[2] (Opp. to Remand Mot. at 17-18).

The Court agrees with Defendants that the forum-selection clause in the Recording Agreement does not preclude this Court from exercising jurisdiction. The Recording Agreement states only that the Agreement is governed by California law and that disputes will be brought "in Los Angeles County." (FAC at 86). The Ninth Circuit has held that, where a forum-selection clause uses the preposition "in," as opposed to "of," the contract "contemplates federal as well as state courts as proper courts for adjudication." *Simonoff*

---

[2] Defendants also suggest that enforcement of a forum selection clause is a procedural matter, which Plaintiffs have waived for the reasons discussed above. However, the Ninth Circuit has held that "a forum selection clause is not a 'defect' within the meaning of § 1447(c) and that the thirty-day statutory time limit does not apply to a motion to remand based on a forum selection clause." *Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009). Accordingly, the Court must consider this argument on the merits.

*v. Expedia, Inc.*, 643 F.3d 1202, 1206 (9th Cir. 2011).  Because this Court is located "in" Los Angeles County and can apply California law to the parties' dispute, the forum selection clause does not deprive this Court of jurisdiction.  *See id.* ("[W]hen a federal court sits in a particular county, the district court is undoubtedly 'in' that county.").

2.    Counterclaims

Plaintiffs next argue that remand is required because Defendants cannot establish federal jurisdiction based on a federal counterclaim.  (Remand Mot. at 15).  Citing *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826 (2002), Plaintiffs argue that the jurisdictional analysis must focus exclusively on the claims asserted on the face of the FAC.  (*Id.* at 16).

In their Opposition, Defendants contend that this argument is a non sequitur because Defendants do not seek to establish jurisdiction based on their counterclaims.  (Opp. to Remand Mot. at 20).  However, Defendants also argue that, in the copyright context, federal jurisdiction may be established based on copyright claims asserted by "any party," including counterclaims.  (*Id.* (citing 28 U.S.C. § 1454(a))); *see also Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015) (noting that § 1454 was amended in response to *Holmes* and was "intended to provide federal courts . . . with jurisdiction over claims arising under the patent [and copyright] laws *even* when asserted in counterclaims").

The Court agrees with Defendants that the basis for removal here was not any federal counterclaim.  As stated in Defendants' notice of removal, Defendants removed this action based solely on their argument that Plaintiffs' claims for declaratory relief and civil theft arise out of federal copyright law and involve a federal question.  (ECF No. 1 at 7-12).  As discussed below, Section II.B.3, the Court agrees with Defendants that removal was proper on this basis.  Moreover, as discussed in Section IV.A.2, the Court agrees with Defendants that Defendants' Counterclaim includes a federal copyright claim, which provides an additional basis for jurisdiction.

### 3.    Well-Pleaded Complaint Rule

Lastly, Plaintiffs argue that remand is required because no federal questions appear on the face of Plaintiffs' well-pleaded complaint.  (Remand Mot. at 17).  While the declaratory relief claim includes "background facts" that may relate to a copyright, Plaintiffs argue that they seek only declaratory relief regarding their contractual rights under state law.  (*Id.* at 18).  As to the civil theft claim, Plaintiffs argue that the claim is grounded in state law and requires proof of elements entirely distinct from copyright infringement.  (*Id.* at 19).  Plaintiffs contend that a case may not be removed to federal court based on a federal defense, including preemption, even where the defense is anticipated in the complaint and is the only question truly at issue in the case.  (*Id.* at 20).  Plaintiffs contend that the complete preemption doctrine does not apply because Plaintiffs' state law claims contain extra elements that distinguish them from claims under the Copyright Act.  (*Id.* at 21-22).

In their Opposition, Defendants argue that Plaintiffs' claims for declaratory relief and civil theft necessarily raise a federal question.  On the declaratory relief claim, Defendants note that Plaintiffs seek to "quiet title" on their ownership of the master recordings, which necessarily implicates the copyright of the recordings.  (Opp. to Remand Mot. at 23).  Defendants also argue that, under the "artful pleading doctrine," Plaintiffs may not defeat removal by failing to plead federal questions that are necessarily raised by Plaintiffs' claims for relief.  (*Id.* at 25).  On the civil theft claim, Defendants argue that Plaintiffs are simply raising a disguised copyright claim because they effectively seek to recover the economic value of the recordings.  (*Id.* at 27).  Additionally, Defendants argue that the complete preemption doctrine applies here because the state rights raised by Plaintiffs are within the subject matter of copyright and are equivalent to the exclusive rights established by federal copyright.  (*Id.* at 28).

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  This rule "makes the plaintiff the

-10-

master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* "It is not enough that the plaintiff alleges some anticipated defenses to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). "A defense that relies on . . . the pre-emptive effect of a federal statute will not provide a basis for removal." *Beneficial Nat'l Bank v. Anderson* ("*Anderson*"), 539 U.S. 1, 6 (2003) (internal citations omitted).

However, "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 22 (1983). In such situations, courts may "delve beyond the face of the state court complaint and find federal question jurisdiction by recharacterizing a plaintiff's state-law claim as a federal claim." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotation marks and citation omitted). Courts have applied this doctrine in two categories of cases: "(1) complete preemption cases, and (2) substantial federal question cases." *Id.* (citations omitted).

### a) Complete Preemption

Under the complete preemption doctrine, "if a federal cause of action completely preempts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 24. This doctrine applies only where "the federal statutes at issue provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. The Supreme Court has identified three statutes that completely preempt related state law claims: (1) section 301 of the Labor Management Relations Act ("LMRA") with respect to claims for violations of collective bargaining contracts, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557 (1968); (2) section 502(a) of the Employee Retirement Income Security Act ("ERISA") with respect to claims asserting improper processing of benefits

under an ERISA plan, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); and (3) sections 85 and 86 of the National Bank Act with respect to usury claims against federally chartered banks, *Anderson*, 539 U.S. at 11.

While neither the Supreme Court nor the Ninth Circuit has addressed the question, "[t]here is increasing authority for the proposition that § 301(a) of the Copyright Act completely preempts the substantive field." 13D C. Wright & A. Miller, Federal Practice & Procedure Jurisdiction § 3582 (3d ed. 2026). Section 301(a) provides, in full:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). From this Court's review, it appears that every circuit court that has interpreted this language has concluded that this provision completely preempts related state law claims. *See Briarpatch Ltd., L.P. v. Phoenix Pics., Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232-33 (4th Cir. 1993); *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012); *Ritchie v. Williams*, 395 F.3d 283, 287 (6th Cir. 2005).

The Court finds this weight of authority to be persuasive. Like the LMRA, ERISA, and National Bank Act, the Copyright Act provides "the exclusive cause of action" for copyright infringement claims through its unequivocal language. *Anderson*, 539 U.S. at 8. The Copyright Act "exclusively" governs "all legal or equitable rights that are equivalent" to those under the Act and preempts claims asserting "any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). Congress has explained that § 301 "is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its

unqualified intention that Congress shall act preemptively." H.R. Rep. No. 94-1476, at 130 (1976)). As the Supreme Court has made clear, the "touchstone of the federal district court's removal jurisdiction" is "the intent of Congress," and "legislative history [that] consistently sets out th[e] clear intention" to establish exclusive federal jurisdiction supports a finding of complete preemption. *Metropolitan Life Ins. Co.*, 481 U.S. at 66. In addition to statements in the legislative history of the Copyright Act, Congress has provided that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338. While this language is not "virtually identical to that" of the LMRA and ERISA, "the grant of exclusive original jurisdiction over copyright claims to the district courts [is] strong evidence that Congress intended copyright litigation to take place in federal courts." *Rosciszewski*, 1 F.3d at 232.

In addition, the Copyright Act also "set[s] forth procedures and remedies governing" the exclusive cause of action. *Anderson*, 539 U.S. at 8. Specifically, the Act defines the protected rights of copyright owners, creates a private right of action for copyright owners against infringers, and sets forth a procedure for the joinder and intervention of other interested parties in such actions. 17 U.S.C. § 501(a), (b); *see also id.* § 106(a). The Act further provides for various remedies, including injunctive relief, impounding and disposition of infringing articles, damages, and costs and attorney's fees. *Id.* §§ 502-505. Thus, as the Second Circuit found, the Copyright Act meets the *Anderson* requirements because it "lays out the elements, statute of limitations, and remedies for copyright infringement." *Briarpatch Ltd.*, 373 F.3d at 305 (citing 17 U.S.C. §§ 501-513).

Accordingly, the Court finds that the Copyright Act meets the requirements for complete preemption as defined by the Supreme Court in *Anderson*. "The import of this conclusion is that any state-law claim alleging infringement of any of the rights of a federal copyright holder under [§ 106] of the Copyright Act is deemed to arise under the Copyright Act and thus to invoke jurisdiction under § 1338(a)." 13D C. Wright & A. Miller, *supra* § 3582. Having so concluded, the Court must now determine whether any of Plaintiffs' claims fall within that category.

b)      *Whether Plaintiffs' Claims are Preempted*

Courts in the Ninth Circuit apply a two part test to determine whether a state law claim is preempted by the Copyright Act, asking (1) "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and (2) "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

At the first step, there is no doubt that the "subject matter" of Plaintiffs' civil theft claim falls within the subject matter of copyright. Section 102 provides copyright protection for "original works of authorship fixed in any tangible medium of expression," including "musical works." 17 U.S.C. § 102(a)(2). The FAC makes clear that Plaintiffs' civil theft claim is premised on "Defendants' post-termination conduct regarding the Master Recordings." (FAC ¶ 208). These recordings constitute "musical works" under § 102. *See Laws*, 448 F.3d at 1139 ("Laws's master recordings held by [the defendant] are plainly within these definitions.").

At the second step, the Court must assess "whether the rights [Plaintiffs] assert[] under California law are equivalent to the rights protected under the Copyright Act." *Id.* at 1143. The Copyright Act provides copyright holders with the exclusive right to reproduce copyrighted works, prepare derivative works, distribute copies of the copyrighted work, and perform the works publicly. 17 U.S.C. § 106. "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989) (citation and alterations omitted). "The mere presence of an additional element" does not render a state law claim qualitatively different unless the extra element "transform[s] the nature of the action." *Laws*, 448 F.3d at 1144.

Applying this test, the Court concludes that Plaintiffs' claim for civil theft asserts rights equivalent to those protected under the Copyright Act. The essence of the civil theft claim is that Plaintiffs attempted to revoke Defendants' license to the master recordings on

-14-

August 12, 2024, yet Defendants "refused to return or halt distribution" and "continued to exploit" the master recordings. (FAC ¶¶ 209, 215). As relief, Plaintiffs seek "[a]ll revenues collected by Defendants from the 25 Master Recordings after August 12, 2024." (*Id.* at 67). Thus, Plaintiffs' claim is premised on the alleged wrongful reproduction and distribution of the master recordings—rights provided by the Copyright Act. *See Hyphy Music, Inc. v. Sena*, No. 1:21-cv-00216-JLT-HBK, 2025 WL 842893, at *15 (E.D. Cal. Mar 18, 2025) (finding civil theft claim preempted by Copyright Act because the plaintiff "is attempting to use the theft by false pretenses claim to recover royalties, and damages for copyright infringement exclusively fall under the scope of the Copyright Act").

Plaintiffs argue that the civil theft claim "requires proof of wrongful taking, knowledge, and intent—elements not present in copyright infringement." (Remand Mot. at 22). However, the addition of knowledge and intent elements does not qualitatively transform the nature of the action. *See Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature." (internal quotation marks and citation omitted)). As to the wrongful taking element, it may be that some civil theft claims include additional elements that are qualitatively different from copyright infringement. *See Wimer v. Reach Out Worldwide, Inc.*, CV 17-1917-RSWL-ASx, 2017 WL 5635461, at *6 (C.D. Cal. July 13, 2017) (finding no preemption of civil theft claim based on "the allegation that Defendants stole storage devices containing Plaintiff's Works"). However, the civil theft statute "covers a spectrum of impermissible activity relating to stolen property" and requires only a showing that "(i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). Here, the alleged "theft" is simply the continued exploitation of copyrighted materials after the purported revocation of Defendants' license. Thus, the claim is not qualitatively different from a copyright

-15-

infringement claim because Plaintiffs would have to do nothing more than prove copyright infringement to prove this element of the claim.

Because the Copyright Act completely preempts copyright infringement claims, and because Plaintiffs' civil theft claim asserts infringement of the rights protected by 17 U.S.C. § 106, Plaintiffs' claim "is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393. Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Plaintiffs' Motion to Remand is DENIED.[3]

## III. DEFENDANTS' MOTION TO DISMISS

Having determined that it has jurisdiction, the Court now turns to Defendants' Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

---

[3] Because the Court finds subject matter jurisdiction based on Plaintiffs' civil theft claim, the Court need not decide whether Plaintiffs' declaratory relief claim provides an additional basis for jurisdiction.

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

### B. Discussion

In their Motion, Defendants seek dismissal of Plaintiffs' claims for civil theft and breach of fiduciary duty. Defendants argue that the civil theft claim is preempted by the Copyright Act because it asserts rights in copyrighted material that are equivalent to the exclusive rights contained in § 106 of the Copyright Act. (Defendants' MTD at 10-11). Alternatively, Defendants argue that the FAC fails to state a claim for civil theft because the revenues that they allege Defendants withheld were not "stolen" at the time they were withheld and because Plaintiffs cannot establish criminal intent. (*Id.* at 16-21). As to the fiduciary duty claim, Defendants argue that the parties' relationship is purely contractual, and that nothing in the contract or the nature of the agreement created a fiduciary relationship between the parties. (*Id.* at 21-26).

In their Opposition, Plaintiffs do not dispute any of the grounds for dismissal raised by Defendants. Instead, Plaintiffs simply argue that the Court should grant leave to amend on any claims that the Court dismisses because any deficiencies can be cured through amendment. (Opp. to Defendants' MTD at 9-12). Plaintiffs contend that they can plead additional facts or different claims to cure any deficiencies identified by the Court.

### 1.      Civil Theft Claim

Beginning with the civil theft claim, the Court agrees that the claim is preempted by the Copyright Act for the same reasons discussed above, Section II.B.3.b.  Accordingly, the claim must be dismissed.

Because this claim is preempted, the Court denies leave to amend as futile. *See, e.g.*, *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1243 (E.D. Cal. 2018) ("[B]y operation of CUTSA preemption, amendment is futile and will not be permitted."); *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1189 (N.D. Cal. 2018) (finding preempted claims must be "necessarily dismissed with prejudice"); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1039 (E.D. Cal. 2024) ("Courts have dismissed without leave to amend where the dismissal was based on preemption." (citation omitted)); *Forrett v. W. Thomas Partners LLC*, 746 F. Supp. 3d 780, 784 (N.D. Cal. 2024) (dismissing preempted claims without leave to amend).

### 2.      Breach of Fiduciary Duty Claim

As to the breach of fiduciary duty claim, the Court agrees with Defendants that Plaintiffs have not alleged facts plausibly demonstrating the existence of a fiduciary relationship between the parties.  A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party."  *Herbert v. Lankershim*, 9 Cal. 2d 409, 483 (1937) (citation omitted).  "A mere contract or a debt does not constitute a trust or create a fiduciary relationship."  *Waverly Prods., Inc. v. RKO Gen., Inc.*, 217 Cal. App. 2d 721, 732 (1963).  Instead, "[b]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf of and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *Comm. on Child. Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983).

From the Court's review, there is no indication in the contract or Plaintiffs' factual allegations that Defendants "knowingly" undertook the obligations of a fiduciary.  The Recording Agreement outlines an arrangement in which Plaintiffs provide Defendants with

recordings in exchange for an advance payment, marketing funds, and shared royalties. (FAC at 83-86).  These provisions indicate only "that the parties' common goal was to achieve a mutually beneficial arrangement," not that Defendants undertook a fiduciary obligation "to subordinate [their] interests to those of" Plaintiffs.  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).  As one California court has explained, "the typical distribution contract, negotiated at arm's length, does not create a fiduciary relationship between the owner of a product and the distributor."  *Recorded Pic. Co. v. Nelson Ent. Inc.*, 53 Cal. App. 4th 350, 370 (1997).  Similarly, courts have rejected the argument that either a "contingent entitlement to future compensation" or an agreement for "profitor revenue-sharing" is sufficient to establish a fiduciary relationship.  *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30-31 (2003).  Further, the Recording Agreement here expressly refers to the parties as "independent contractors," suggesting that the parties did not intend to form a fiduciary relationship.  (FAC at 86).  While such a designation is not dispositive on its own, *see April Enters., Inc. v. KTTC*, 147 Cal. App. 3d 805, 820 (1983), Plaintiffs do not otherwise identify any conduct by the parties that would suggest that Defendants knowingly undertook fiduciary obligations notwithstanding the contractual language.  Indeed, Plaintiffs have not opposed Defendants' Motion on the merits at all and have thereby conceded this argument.  *See* C.D. Cal. L.R. 7-12; *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules [requiring the filing of an opposition brief] is a proper ground for dismissal.").

Nor have Plaintiffs demonstrated that the parties' relationship was of the type that imposes fiduciary duties as a matter of law.  "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."  *Wolf*, 107 Cal. App. 4th at 30.  In the FAC, Plaintiffs assert that their relationship with Defendants was fiduciary in nature either because the parties formed a joint venture or because Defendants created a confidential relationship by exercising exclusive control over financial data.  (FAC ¶¶ 183-85).  The Court will consider these arguments in turn.

A joint venture is "an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *Nelson v. Abraham*, 29 Cal. 2d 745, 749 (1947). "The elements necessary for its creation are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control." *April Enters., Inc.*, 147 Cal. App. 3d at 819. While this is partially a question of fact, "where there is no conflicting extrinsic evidence concerning the interpretation of the contract creating the relationship, the issue is one of law." *Cnty. of Riverside v. Loma Linda Univ.*, 118 Cal. App. 3d 300, 313 (1981). Here, even assuming the first and second elements are met, Plaintiffs have not alleged facts showing that they possessed a right to joint control over the alleged venture. To the contrary, the Recording Agreement assigns Defendants the "sole and exclusive right to exploit the Master(s)," including the right to control artwork and videos, license the master recordings to third parties, and use Plaintiffs' name, likeness, and biography for marketing. (FAC at 84). To be sure, the Agreements do include provisions granting Plaintiffs the "opportunity to approve" marketing materials using their likeness and requiring "mutual approval" of marketing expenses and budgets. (*Id.* at 84, 90). However, this limited grant of veto power over a subset of marketing materials does not amount to a "right to joint control" of the purported venture. By its terms, the contract grants Defendants exclusive control over licensing, partnerships, release dates, artwork, and videos, while granting Plaintiffs only limited control over marketing expenses and materials including their likeness. On this record, Plaintiffs have not plausibly demonstrated the existence of a right to joint control over the alleged venture.

As an alternative, the FAC asserts that Defendants' exclusive control over financial data and Plaintiffs' inability to independently verify it created a confidential relationship. (FAC ¶ 185). However, contrary to this assertion, the Recording Agreement *does* provide a means for independent verification of financial data, requiring Defendants to provide semiannual accounting and permitting Plaintiffs to audit Defendants' financial records up to one time per year. (*Id.* at 85). Plaintiffs do not explain why this mechanism in the contract is insufficient to rectify any information asymmetry. *See City of Hope Nat'l Med.*

*Ctr.*, 43 Cal. 4th at 389 (the "superior knowledge or expertise of the other party . . . would not necessarily create fiduciary obligations" unless "one party's vulnerability is so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries"). To the extent Plaintiffs suggest that Defendants had a fiduciary duty to provide an accounting, the Court disagrees. While a duty to account can arise as part of a fiduciary relationship, it can also arise "from the implied covenant of good faith and fair dealing" or, as here, from an explicit provision in the contract. *Wolf*, 107 Cal. App. 4th at 34. The fact that a contract calls for an accounting "does not itself convert an arm's length transaction into a fiduciary relationship." *Id.*; *see also City of Hope Nat'l Med. Ctr.*, 43 Cal. 4th at 391 ("[O]ne party's right to an accounting by the other party is a remedy that by itself is insufficient to give rise to fiduciary duties on the part of the party with the duty to render an accounting." (citing *Wolf*, 107 Cal. App. 4th at 33-34)). Here, Defendants' obligation to provide an accounting was purely contractual, not fiduciary.

Based on the above, the Court concludes that Plaintiffs have not alleged facts plausibly demonstrating the existence of a fiduciary relationship between the parties. Accordingly, the Court GRANTS the Motion and DISMISSES the fiduciary duty claim. The Court further concludes that leave to amend this claim is not warranted. Plaintiffs are currently on their Fourth Amended Complaint, meaning that Plaintiffs have had at least five opportunities to plead their claims. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (Court's discretion to deny leave to amend "is particularly broad where, as here, a plaintiff previously has been granted leave to amend"). While the previous amendments occurred before this action was removed, the sheer number of amendments heavily supports denying leave. *See Lucas v. Breg, Inc.*, No. 15-cv-258-BAS-NLS, 2016 WL 127583, at *5 (S.D. Cal. Jan. 11, 2016) (rejecting argument that court should discount previous amendments made in state court). Denial of leave to amend is also warranted by Plaintiffs' failure to oppose the Motion to Dismiss. Despite the Court permitting Plaintiffs an opportunity to file an untimely opposition, Plaintiffs have failed to raise any arguments disputing the Motion on the merits. Thus, it appears that Plaintiffs have conceded

Defendants' arguments, suggesting that further leave to amend would be futile.  *See, e.g.*, *Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (noting that failure to address arguments in an opposition brief acts as an "implicit concession").  Other factors, including the public's interest in expeditious resolution of litigation, the Court's need to manage its docket, and the risk of prejudice to Defendants all support dismissal on this basis as well. *See Ghazali*, 46 F.3d at 53.

## IV.    PLAINTIFFS' MOTION TO DISMISS

Finally, the Court turns to Plaintiffs' Motion to Dismiss Defendants' counterclaims. Plaintiffs seek dismissal under Rule 12(b)(1), arguing that the Court lacks original jurisdiction over the counterclaims and should not exercise supplemental jurisdiction. Plaintiffs also seek dismissal of several of Defendants' counterclaims pursuant to Rule 12(b)(6).  The Court will discuss these arguments separately.

### A.    12(b)(1) Motion

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal on the grounds that the Court lacks jurisdiction over the subject matter.  Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331 or there is diversity jurisdiction under 28 U.S.C. § 1332.  Where federal question jurisdiction exists as to some but not all claims, "the district courts shall have supplemental jurisdiction over all other claims that are so related to [the federal] claim[] . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Nevertheless, courts "may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). In deciding whether to exercise supplemental jurisdiction, courts should consider

principles of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

A Rule 12(b)(1) motion may assert either a "facial" attack to jurisdiction, asserting that "a complaint's allegations are themselves insufficient to invoke jurisdiction," or a "factual" attack, asserting that "the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). In a factual attack, the moving party "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In a facial attack, meanwhile, courts "treat the factual allegations in the complaint as true." *Courthouse News Serv.*, 750 F.3d at 780. As the party asserting federal jurisdiction, Defendants bear the burden of proving the existence of jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

2.    Discussion

Plaintiffs first argue that the Court lacks subject matter jurisdiction over Defendants' counterclaims because the counterclaims all arise out of state law. (Plaintiffs' MTD at 15). Plaintiffs contend that the gravamen of the dispute is a matter of contract, and that background references to copyright law do not create federal jurisdiction. (*Id.* at 17). Plaintiffs also argue that a counterclaim itself cannot serve as the basis for federal question jurisdiction, nor can an anticipated defense to a counterclaim. (*Id.* at 16). As to supplemental jurisdiction, Plaintiffs argue that the Court should decline to exercise jurisdiction because the Counterclaim raises novel and complex issues of state law concerning joint venture relationships, fiduciary duties, and accounting duties. (*Id.* at 18). Plaintiffs also argue that the state law claims substantially predominate, and that the fact that this case was pending in state court for 19 months is an exceptional circumstance warranting declination of jurisdiction. (*Id.* at 18-19). Finally, Plaintiffs argue that principles of judicial economy and comity favor remand of the action. (*Id.* at 19-20).

-23-

In their Opposition, Defendants argue that the Court has subject matter jurisdiction because the claim for declaratory judgment raises a federal question by seeking a determination of non-infringement under the Copyright Act. (Opp. to Plaintiffs' MTD at 9-10). Defendants argue that this, by itself, is a sufficient basis for subject matter jurisdiction over the entire case. (*Id.* at 22-24). Alternatively, Defendants argue that the Court has subject matter jurisdiction over the claims for declaratory relief and civil theft in the FAC and can therefore exercise supplemental jurisdiction over the counterclaims. (*Id.* at 11-17). Defendants note that Plaintiffs do not challenge the fact that the counterclaims form part of the same case or controversy as Plaintiffs' federal claims, such that the Court may exercise supplemental jurisdiction. (*Id.* at 17). Defendants argue that the Court should not decline supplemental jurisdiction because none of the counterclaims raise novel or complex issues of state law, state law issues do not predominate given the declaratory judgment claim, and there are no exceptional circumstances supporting dismissal. (*Id.* at 18-20). Instead, Defendants argue that supplemental jurisdiction is particularly appropriate because the state law claims are intertwined with the federal claims, and separation of the claims would risk inconsistent results and duplication of efforts. (*Id.* at 21-22).[4]

Plaintiffs here assert only a facial challenge to the existence of subject matter jurisdiction. Accordingly, the Court must take the factual allegations in Defendants' Counterclaim as true. Taking the allegations as true, the Court agrees with Defendants that their declaratory judgment claim raises a federal question.

As the Ninth Circuit has explained, "[i]n an action for declaratory relief, the plaintiff seeks an adjudication of claims that the defendants threaten to assert against the plaintiff."

---

[4] Defendants also argue that the Court should decline to consider Plaintiffs' Motion at all because it was filed more than twenty-one days after Defendants' filing of the Counterclaim. Given Plaintiff's Counsel's attestations of confusion following removal of this action, the Court will exercise its discretion to hear the Motion notwithstanding its untimely filing. However, the Court notes that Plaintiffs have made untimely filings in connection with all three of the Motions at issue in this Order. Plaintiff's Counsel is warned that future untimely filings may be grounds for sanctions, including monetary sanctions and the denial of untimely motions.

-24-

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1384 (9th Cir. 1988).  Because the "cause of action litigated is not that of the plaintiff but that of the defendants . . . [f]ederal jurisdiction . . . is proper if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law."  *Id.*  Thus, "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 19; *see also Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012) ("In the declaratory judgment context, whether a federal question exists is determined by reference to a hypothetical non-declaratory suit (i.e., a suit for coercive relief) between the same parties; if a federal question would appear in the complaint in this hypothetical suit, federal jurisdiction exists over the declaratory-judgment action.").

Under Ninth Circuit precedent, a claim arises under the Copyright Act if "(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims." *Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003).  Here, Defendants' declaratory judgment counterclaim seeks a declaration that "Defendants are not infringing on Plaintiffs' exclusive rights pursuant to the Copyright Act." (Counterclaim at 14).  The inverse of this action would be an affirmative claim for infringement of a copyright.  Such a claim would necessarily arise under the Copyright Act because it would seek copyright remedies such as injunctive or monetary relief and would likely require an interpretation of provisions of the Copyright Act.  This is not a situation where "the sole question for consideration" is ownership of a copyright.  *See Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983) ("Only when such ownership is the *sole* question for consideration are federal courts without jurisdiction" (emphasis added)).  Rather, Defendants' declaratory judgment counterclaim seeks not only a declaration of ownership of rights to administer the recordings, but also a declaration of non-

infringement.  Similarly, an inverse coercive claim would seek not simply a determination of ownership but a finding of infringement and an assessment of damages.

The fact that Plaintiffs have not directly asserted a Copyright Act claim in their FAC does not change the Court's conclusion, since the focus is on a "hypothetical non-declaratory suit."  *Chase Bank USA, N.A.*, 695 F.3d at 554; *see also Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) ("The relevant question concerns the nature of the *threatened* action in the absence of the declaratory judgment suit." (emphasis added)).  Moreover, although Plaintiffs have not directly asserted a copyright infringement claim, the Court previously found that their claim for civil theft raises equivalent rights to those protected under the Copyright Act and therefore arises under the Copyright Act.  *See supra* § II.B.3.  In connection with this claim, Plaintiffs seek damages in the form of "post-termination revenue."  (FAC at 68).  These damages are effectively copyright infringement damages and are therefore "a remedy expressly granted by the Copyright Act." *Scholastic Ent., Inc.*, 336 F.3d at 986; *see* 17 U.S.C. § 504 ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement.").

As to the remaining claims, the Court concludes that exercising supplemental jurisdiction over the state law counterclaims is appropriate.  As Plaintiffs concede, all of the counterclaims arise out of a "common nucleus of operative fact," involving disputes over marketing funds for Plaintiffs' recordings, and therefore form part of the same "case or controversy." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a).  Absent supplemental jurisdiction, the counterclaims would be heard by two different courts, requiring substantial duplication of efforts and potentially resulting in inconsistent judgments.  For example, both the declaratory judgment counterclaim and the breach of contract counterclaim are premised on the argument that Plaintiffs' termination of the contract was invalid.  If the breach of contract counterclaim is adjudicated in a separate action, it could lead to inconsistent factual and legal conclusions.  Thus, principles

-26-

of judicial economy, convenience, and fairness all support the Court exercising supplemental jurisdiction over the counterclaims.

The same is true as to the state law claims in Plaintiffs' FAC. As discussed above, the basis for federal jurisdiction is Plaintiff's civil theft claim, which the Court has now dismissed as preempted by the Copyright Act. While dismissal of all federal-law claims will, "in the usual case," support declining supplemental jurisdiction, *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7, that is not the case here, where the Court retains jurisdiction over a federal counterclaim. Because Defendants assert a federal counterclaim, declining to exercise supplemental jurisdiction over the state law claims in Plaintiff's FAC would lead to the same problems of inconsistent judgments and duplication of efforts discussed above. It is true, as Plaintiffs argue, that the Supreme Court has held that a federal counterclaim cannot ordinarily serve as the basis for jurisdiction under 28 U.S.C. § 1338(a). *See Holmes*, 535 U.S. at 831. However, following *Holmes*, Congress amended § 1338(a) to provide for exclusive federal jurisdiction over copyright cases and added a new removal statute, which permits removal to federal court where "*any party* asserts a claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1454(a) (emphasis added). These changes "were intended to provide federal courts . . . with a broader range of jurisdiction," including over claims arising under the patent and copyright laws "*even* when asserted in counterclaims." *MPHJ Tech. Invs.*, 803 F.3d at 644. A necessary corollary of the ability to remove on the basis of a counterclaim arising under the Copyright Act is that federal courts have jurisdiction over cases where the only federal claim is a counterclaim. *See Beach Front Villas, LLC v. Rogers*, CIV. NO. 18-00457 LEK-RLP, 2019 WL 1223305, at *4 (D. Hawaii Mar. 15, 2019) ("With the enactment of the AIA and the addition of § 1454, a counterclaim arising under copyright law may serve as the basis for federal subject matter jurisdiction."). Thus, as with the state law counterclaims, principles of judicial economy, convenience, and fairness counsel in favor of the Court's exercise of supplemental jurisdiction over Plaintiffs' state law claims.

**B.      12(b)(6) Motion**

Lastly, Plaintiffs seek dismissal of Defendants' counterclaims for failure to state a claim. The Court discusses each of Plaintiffs' arguments in turn.[5]

### 1.      Breach of Contract Claim

Plaintiffs raise three arguments in favor of dismissal of the breach of contract claim. First, Plaintiffs challenge the sufficiency of Defendants' counterclaim for breach of contract on the grounds that it does not identify which specific provisions of the Recording Agreement were breached or how. (Plaintiffs' MTD at 20). Plaintiffs argue that they cannot ascertain from the Counterclaim what conduct Defendants claim constitutes a material breach. (*Id.* at 21). Plaintiffs also argue that the Counterclaim lacks concrete factual allegations of how and when Plaintiffs breached their obligations. (*Id.*).

The Court disagrees. The Counterclaim clearly alleges that Plaintiffs breached the contract "by refusing to spend the Marketing Funds they received on marketing the Subject Music within the time frame of the Extension Period ending February 2, 2026 and by failing to provide the receipts and/or detailing the expenses they paid for with the Marketing Fund." (Counterclaim ¶ 48). Defendants contend that this conduct violated provisions in the Recording Agreement that made marketing expenditures a recoupable expense and that required marketing funds to be spent within eighteen months after release of the associated recordings. (*Id.* ¶¶ 12, 19). These allegations are sufficient to provide Plaintiffs "fair notice of the basis for" Defendants' claim and to permit Plaintiffs to attack the legal sufficiency of Defendants' theory of breach. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (citation omitted).

---

[5] The Court notes that, in addition to the arguments discussed below, in their reply brief, Plaintiffs have raised specific challenges to the conversion, restitution, and declaratory relief claim that are not raised in the initial Motion. *See* (Reply ISO Plaintiffs' MTD at 4-6). As previously stated, the Court will "not consider arguments raised for the first time in a reply brief." *Zamani*, 491 F.3d at 997.

Second, Plaintiffs argue that the breach of contract counterclaim fails to address Defendants' own breaches of the contract. (Plaintiffs' MTD at 21). Plaintiffs contend that Defendants' allegations are implausible given the factual context established in the FAC. (*Id.*). However, on a motion to dismiss a counterclaim, the Court must accept all factual allegations in the counterclaim as true and need not accept contrary "factual allegations alleged by the moving party in the initial Complaint." *State Farm Life Ins. Co. v. Landfried*, No. 5:19-cv-1845-SVW-SHK, 2020 WL 5356706, at *3 (C.D. Cal. June 25, 2020). Plaintiffs' argument that Defendants committed their own breach of contract is effectively an affirmative defense to liability, which the Court cannot adjudicate on a motion to dismiss unless there are "no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Here, there are numerous disputed issues of fact about the basis for Plaintiffs' repudiation of the Recording Agreement, which make resolution of the parties' competing claims of breach inappropriate on a Rule 12(b)(6) motion to dismiss.

Finally, Plaintiffs argue that the breach of contract counterclaim fails to provide a theory of damages and therefore does not provide adequate notice of the relief sought. (*Id.* at 22). Again, the Court disagrees. The Counterclaim alleges that Defendants have been harmed in an amount of at least $334,000 by Plaintiffs' alleged breach. (Counterclaim ¶ 51). Defendants allege that they paid this amount to Plaintiffs for the purposes of marketing, and that Plaintiffs stole this money by refusing to return it or spend it on marketing. (*Id.* ¶¶ 1, 48). Defendants' theory of damages is clear.

### 2. Fraud and Fiduciary Duty Claims

Plaintiffs next argue that, "[t]o the extent the Counterclaim alleges fraud or misrepresentation," these claims fail because Defendants have not pleaded the claims with particularity. (Plaintiffs' MTD at 23). Plaintiffs also seek dismissal of any fiduciary duty claims "[t]o the extent the Counterclaim alleges" such claims. (*Id.* at 23-24). In their Opposition, Defendants state that they are not asserting fraud or fiduciary duty claims. (Opp. to Plaintiffs' MTD at 30-31).

As Defendants argue, the Counterclaim raises claims for conversion, breach of contract, breach of the duty of good faith and fair dealing, restitution, accounting, and declaratory relief—not fraud or breach of fiduciary duty. The Court is unclear why Plaintiffs have challenged claims that are not included in the Counterclaim. The Court therefore DENIES the request to dismiss these claims.

### 3. Incorporation By Reference

Finally, Plaintiffs argue that the Recording Agreement explicitly provides for a right to terminate the agreement for cause upon a material breach. (Plaintiffs' MTD at 24). Citing this provision and the principle that courts may disregard factual allegations that are contradicted by documents attached to a pleading, Plaintiffs argue that the Court must discount Defendants' assertion that the termination of the Recording Agreement was wrongful. (*Id.*).

Plaintiffs have not identified any factual inconsistency between the Recording Agreement and Defendants' factual allegations. That the Recording Agreement permits termination for cause is not inconsistent with Defendants' allegations that the Agreement was not terminated for cause. Plaintiffs do not identify any specific factual deficiencies in this allegation. Accordingly, this request is DENIED.

## V.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' Motion to Remand is DENIED;

2. Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint is GRANTED and Counts II and IV of the FAC are DISMISSED, without leave to amend. The FAC, as modified by this Order, will be the operative complaint. Within fourteen (14) days of the issuance of this Order, Defendants shall file an Answer to the FAC; and

3.      Plaintiffs' Motion to Dismiss Defendants' Counterclaim is DENIED.  Within fourteen (14) days of the issuance of this Order, Plaintiffs shall file an Answer to the Counterclaim.

**IT IS SO ORDERED.**

DATED:  July 7, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-31-